MICHAEL G. KING (SBN 145477)
mking@hgla.com
JANICE M. KROLL (SBN 189975)
jmkroll@hgla.com
HENNELLY & GROSSFELD LLP
4640 Admiralty Way, Suite 850
Marina del Rey, CA 90292
Tel: (310) 305-2100; Fax: (310) 305-2116

Brett E. Lewis, Pro Hac Vice
Brett@LewisHand.com
LEWIS & HAND, LLP
45 Main Street, Suite 818
Brooklyn, NY 11201
Tel: (718) 243-9325; Fax: (718) 243-9326

Attorneys for Defendants
NAVIGATION CATALYST SYSTEMS, INC., and
BASIC FUSION, INC.,

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| VERIZON CALIFORNIA INC.; VERIZON TRADEMARK SERVICES LLC; and VERIZON LICENSING COMPANY,<br><br>Plaintiffs,<br><br>vs.<br><br>NAVIGATION CATALYST SYSTEMS, INC.; and BASIC FUSION, INC.,<br><br>Defendants. | Case No. 2:08-CV-02463 ABC (Ex)<br><br>Assigned to Judge Audrey B. Collins<br>Magistrate Judge Charles Eick<br>Courtroom 680<br><br>**AFFIDAVIT OF SETH JACOBY IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNTION** |

### AFFIDAVIT OF SETH JACOBY

STATE OF NEW YORK    )
                     ) ss:
COUNTY OF NEW YORK   )

I, SETH JACOBY, being duly sworn, depose and state under penalty of perjury:

1. I am President of Firstlook, Inc. a wholly-owned subsidiary of Connexus Corporation. Firstlook, Inc. (formerly known as New.net) is the parent corporation of both Navigation Catalyst Systems, Inc. ("Navigation") and Basic Fusion Inc. ("Basic Fusion"). I have served in this capacity since April 2008. I previously served in various capacities with Connexus Corporation through its predecessor, The Vendare Group (together, "Connexus"), since March 2005. In my positions with Firstlook, Inc. and Connexus, I have been responsible for various aspects of their online business, including the business associated with domain names. As of June 16, 2008, Connexus had 192 full time employees, interns and contractors, not including corporate support staff. My knowledge of the matters herein is based on personal knowledge and a review of business records, except where stated upon information and belief.

2. Basic Fusion is a wholly owned subsidiary of Firstlook, Inc. Basic Fusion has been an ICANN accredited registrar since 2004 that offers bulk domain name registration services to customers. Basic Fusion has registered Verizon formative domain names since its inception in 2004. Basic Fusion does not in any way select or control the selection of domain names registered by Navigation, which is a separate legal entity from Basic Fusion. Rather, Basic Fusion processes the registration requests made by Navigation. Basic Fusion has its principal offices in El Segundo, California.

3. Navigation also offers fully managed and customized domain navigation solutions to registrars, registrants, and resellers. Basic Fusion currently has a number of third party customers with a total in excess of 100,000 domain names under registration. Navigation owns, or represents owners, of website domains on which it provides information to consumers and advertising revenue to advertisers, as well as Internet directory and search capabilities in numerous different verticals. For

purposes of this proceeding, the most relevant aspect of Navigation's business is providing information to consumers and advertising revenue to its customers via its portfolio of approximately 766,087 websites.

4. Navigation uses a proprietary automated tool to add un-owned domain names during the ICANN Add Grace Period.[1] The ICANN Add Grace Period is a 5 day period where a registrant has the ability to elect to keep or return a domain name to the registry without being charged for the domain name. Upon the completion of the Add Grace Period, Navigation is charged for the domain name if it elects to register the domain, or is not charged if Navigation elects to return the domain name to the registry.

5. A domain is only officially registered and owned if Navigation elects to keep and register the domain at the conclusion of the Add-Grace Period. When a domain is registered by Navigation its ownership is publicly available via ICANN's "WHOIS." WHOIS (who is) is the aptly named Internet function that allows one to query the official ICANN database for domain registration information. Any domain registered by Navigation clearly identifies Navigation as the registrant with the following accurate information: Navigation Catalyst Systems, Inc., 2141 Rosecrans Ave., Suite 2020, El Segundo, CA 90245, Email: domainadmin@navigationcatalyst.com, Phone: 310.647.1592, Fax: 310.647.6001. Navigation has not changed its standard WHOIS information or hindered access to its WHOIS records since the filing of this action. Navigation's WHOIS server has, to my knowledge, been online and functional since the filing of the Complaint.

6. Navigation uses the Add Grace Period to determine if a domain generates revenue and to manually screen each domain for potential trademark conflicts. When a domain is identified by our human screeners as a potential trademark conflict it is immediately returned to the registry. Navigation does not and has not engaged in a practice of perpetually adding and dropping domain names to

---

[1] This activity is sometimes referred to as "domain tasting."

collect advertising fees, while avoiding registration costs. This practice is known in the industry as kiting.

7. Navigation has always attempted to use due diligence to screen potential trademarks from registration.[2] Attached as Exhibit C are printouts of Navigation Catalyst Systems job descriptions for six compliance personnel. Attached as Exhibit K is a receipt for purchase of trademark database from the PTO dated May 17, 2006. Although Navigation's intent was to identify available dictionary words and generic domain names and typos, automated registration systems do on default, differentiate between trademark and other types of domain names. Even before this litigation was filed, Navigation had undertaken an internal compliance review process and had retained outside counsel to advise it on ways to improve its standard operating procedures. Beginning in late 2007 Navigation escalated its efforts to screen out potential trademarks. Navigation increased the size of its existing "blacklist" database of (i) character-strings that represent non-generic and descriptive brands and trademarks, and (ii) domains which represent non-generic and descriptive brands and trademarks. Our domain registration engine uses this blacklist to reject from our automated registration process any domain which contains the exact domain or character-string on the blacklist. The blacklist actively removes dashes and "www" in the character-string so the root characters are still recognized and screened out. This blacklist is regularly added to and updated by our compliance staff. In 2006 Navigation also added a second human screener to re-review the first screener's review of all added domains during the Add Grace Period for potential trademarks. Any domain that passes the blacklist and is auto-registered is reviewed by our compliance screeners on a daily basis. Screeners attempt to identify domains that may be deemed to be close derivations of reasonably known, non-generic, or descriptive trademarks or famous brands, including clear typos and clear misspellings, and mark those domains for non-registration. Screeners reject domain

---

[2] Navigation has had a "blacklist" in place since at least as early as 2005.

4

names because of their potential trademark significance, not, as Verizon states, because they do not generate revenue.

8. In June 2008 an internal automated tool will be completed that integrates the USPTO trademark database with our review process to assist screeners by identifying domains that may be registered trademarks. The screener-identified names are flagged for rejection and are returned to the registry before the end of the Add Grace Period. The screener-rejected domains are also added to our blacklist that prevents us from adding or registering that domain in the future.

9. Verizon contends that Navigation has registered tens or hundreds of thousands of domain names containing terms similar to third party trademarks. Although Navigation did not have enough time to analyze **all** of the domain names cited by Verizon in its various papers, that violate third party trademarks, attached as Exhibit 7 to Verizon's complaint is a list of 21,133 domains allegedly owned by Navigation that violate third party trademarks, however, Navigation owns only 1,506 of the identified domains, which it is currently in the process of divesting from its portfolio. Attached as Exhibit J is a list of the 1,506 domains registered to Navigation.

10. Since our domain portfolio was built over many years it contains legacy domains that may be potential trademarks. In May 2008 Navigation hired additional human screeners to begin the process of screening the entire Navigation portfolio for domains that might be close derivations of non-generic or descriptive trademarks or famous brands, or that became non-generic or descriptive trademarks or famous brands after our registration of the domain. Navigation has eliminated and deleted thousands of close derivations of trademarks each month by proactive human screening, including adding the screener rejected names to our blacklist to prevent re-registration by our automated system. Attached as Exhibit F is a partial list of the 55,794 domains rejected by human screeners since January 2007.

11. In some cases we may own a generic domain that may be a close match to a known trademark. In these cases, we seek to optimize the name to the generic use of the word or to a category which does not conflict with the trademarked use. For example, if we owned <time.com> we would optimize the domain name towards clocks and timepieces, not magazine subscriptions based on Time Warner's ownership of the "Time" trademark as it relates to news periodicals.

12. In May and June 2008 Navigation added over 6,000 new character-string terms containing brand names and typos of such brands to the blacklist, more than quadrupling its size to over 8,500 terms. In June 2008 Navigation expects to add at least another 10,000 additional terms to the blacklist derived from a list of brands that was purchased from a third party, including all typos and misspellings of such brands. Attached as Exhibit D is a printout of an email dated June 3, 2008 from Business Media Marketplace indicating purchase of Brandweek's 2007 Superbrands Report.

13. These compliance efforts have increased our diligence on trademarks and resulted in us avoiding added or registering thousands of potential trademarked domains. Attached as Exhibit E are 10 of 261 pages of an Excel spreadsheet used to calculate revenues generated from domains deleted daily by human review from Jan. 2008 – May 31, 2008. These are names that are deleted on a daily basis within the Add Grace Period by human screening. In total, these names made $12,271 during that period. This dollar amount is only for the period of time between adding and possible registration (approximately 4 days per name). If we had kept those names for a period of a year, they would have potentially earned somewhere in the vicinity of $350,000 – $800,000 over a twelve month period based on our current model for profitability. Attached as Exhibit Q is a list of domains that were deleted by NCS in human screens in March and April 2008 during the Add Grace Period.

14. Verizon's papers allegedly identify 37 domains that Navigation registered since April 23, 2008. Of these, 4 domain names are owned by customers

of Basic Fusion and not by Navigation. Among the other 33 domain names, 10 were registered before Navigation was served with the Complaint. Of the 23 domain names remaining on the list, 22 were screened and deleted by Navigation's human screeners during the Add Grace Period. Only 1 of these domains is presently owned by Navigation, <vzwwireles.com>. That domain name was registered on May 3, 2008, three days before the terms "vz" and "vzw" were added to Navigation's blacklist. Attached as Exhibit L to my Affidavit is a list of these domain names and their whois status. Attached as Exhibits M, N, O and P are individual whois records for domain names registered by Basic Fusion's customers.

15. On May 6, 2008, as an additional compliance measure, Navigation added the following terms to its blacklist to prevent any domains from being added that contain the following character strings: fio, vz, vzw, ver, vir, zeri, and eriz. On June 12, 2008, Navigation added the following term to its blacklist to prevent any domains from being added that contain the following character strings: zon. These over-inclusive blacklist additions are meant to stop any auto-additions by our tool of Verizon related trademarks. They also serve to prohibit the tool from registering any generic domains which may contain character-strings that are unrelated to trademarks.

16. At no time have we ever offered to sell, license or otherwise convey for financial gain any domain names Verizon identified in its complaint to Plaintiffs, Plaintiffs' competitors, nor anyone else, and never contemplated doing so. Attached as Exhibit A is a copy of Navigation Catalyst Systems Domain Name Registration Compliance Standard Operating Procedures. Upon receiving Verizon's complaint alleging that Navigation owned 1,357 domains that violated Verizon trademarks, Navigation conducted a prompt and diligent search of its portfolio and determined that it owned only 126 of the names on Verizon's list.[3] Attached as Exhibit G is a

---

[3] Navigation also promptly disabled any advertised links displayed in connection with the disputed domain names.

printout of Navigation Catalyst Systems internal document of 126 registered domain names on Verizon's list. Attached as Exhibit B are printouts of whois information from DomainTools.com for representative domains that were not registered to NCS at the time that the complaint was filed. Navigation immediately and voluntarily transferred over those names to Verizon. Of that number, 2 domains that were in tasting and would have been deleted, were registered after this lawsuit was filed out of a legal obligation not to cancel domain names subject to a litigation (VERISONPICPLACE.COM and MYVZWPIXPLACE.COM). Fewer than thirty-five of the currently registered domain names are misspellings of the word VERIZON plus some other word or phrase. Attached as Exhibit H is a list of VERIZON formative typos. Those domain names consist largely of badly misspelled words, such as WERIZONVIRALES.COM, WERIZONVIRELES.COM, WWWVIRIZON.COM, VERIOSION.COM, VERISONNETWORK.COM, VERVZION.COM, and ZERIZONWIRLESS.COM. The remainder are variations on far less well-known VZ and VZW marks, and of those, many (such as, VZWL.COM, VZW3.COM, VZWPUIX.COM, TEXTVZW.COM, VZNTEXT.COM, VZW22.COM, VZWCHAPERON.COM, VZWHUBS.COM and VZWPLACE.COM) are not readily identifiable with Plaintiffs. Attached as Exhibit I is a list of predominately VZ and VZW formative typos. Navigation's search engine system is based on a keyword system that delivers relevant advertisements and search listings to Navigation websites based on certain keywords. Since Navigation is a publisher of Yahoo Search marketing ("Yahoo"), we simply publish the advertisements that advertisers bid on at Yahoo. Navigation does not pick and choose the advertisements that show up on our pages. In fact, Navigation does not have any control over which advertisements are delivered on our pages. For example, if there are Yahoo advertisers who bid on the keywords "Acoustic" and "Guitars," or even just "Guitars," then the Yahoo advertiser's ads would show up on Navigation's websites related to acoustics or guitars.

17. Navigation has an established company policy of transferring disputed domain names to complaining parties, where justified. When a third party asserts that a domain name registered by Navigation allegedly infringes on its trademark, and the party can establish the ownership of exclusive trademark rights, Navigation's policy is to transfer the domain to the complaining party. Plaintiffs filed this action without notice, so there was no opportunity to resolve Plaintiffs' concerns outside of litigation. Were the requested injunction granted, it would stop Navigation's entire business and staff layoffs would follow. Navigation has offered to transfer, without charge, any domain names which are similar to the trademarks of others.

_____
Seth Jacoby
President of Firstlook, Inc.

Sworn to before me on this
16th day of June, 2008

_____
Notary Public

ROBERT P. JOHNSON
NOTARY PUBLIC - STATE OF NEW YORK
NO. 02JO6158220
QUALIFIED IN KINGS COUNTY
MY COMMISSION EXPIRES DEC. 26, 2010